The United States Court of Appeals for the Federal Circuit is now open to the in-in session. Judge Hayes of the United States and his Honorable Court. Thank you. Be seated. Okay. Our first argued case this morning, December 15, 1782, Croy IP Holdings against Safeway Incorporated. Mr. Miller. May it please the Court. Inventions that provide specific technical solutions to problems associated with prior conventional industry practice are patent eligible. The 830 patent claims here are directed to systems and methods that were unconventional in the 1997 time frame in which the invention was made. The invention solved technical problems associated with computerized incentive program systems. The claims are patent eligible subject matter that is also novel and non-obvious. The district court erred in holding otherwise on summary judgment. In 1997, there were numerous computerized incentive program systems in existence or being proposed. These systems offered opportunities, no doubt, but they also presented real challenges in the real world. Computer networks allowed access to a very diverse customer base spread across a very wide geographical reach. Is it right to say that the, pardon the interruption, but is it right to say that the abstract idea here is providing an incentive award program on a computer network? Well, that's what the district court found, and we disagree with that. In fact, we believe that was sort of the first place where the court erred in its analysis. And what's wrong with that understanding, identification of the abstract idea involved in this claim? It's far too broad in general relative to the actual claim limitations, Your Honor. The actual claim limitations clearly show that the claim as a whole is not simply a computerized version of the broad concept of an incentive program. There are many, many types of incentive programs. Well, maybe that would be the proper argument for step two of the Alice inquiry on whether or not you have an inventive concept. But as for step one, I mean, we have to go through this step-two-step framework, I think, and step one is trying to figure out, you know, what is the abstract idea. So what would you say in response to step one? Well, I still believe that even in step one, Alice and the other cases instruct that we are looking at what is the abstract idea embodied in the claims. And so the claims are still relevant in step one. These claims have numerous specific limitations that show that they clearly are not simply directed to an abstract idea of all computerized incentive programs. And we've dealt with this in detail in our brief. The limitations include specific details of the system architecture of claim one, the relationship between the award fulfillment application. I hear what you're saying, but doesn't that really get to what Judge Chen was talking about in his colloquy with you, the inventive concept part of it? It's difficult for me to see how at the step one phase we don't have anything more here than just a coupon incentive program. I'm not saying it's a bad program or anything, but I mean, isn't what you're saying now really directed to the part two test, as Judge Chen was saying? If I could answer your question in two parts, Your Honor, and we'll get to the step two. But before I do that, I do want to sort of hold my ground on my argument that in step one, it is improper to define the abstract idea as broadly as a district court did. And the importance of that, in my view, under the case law, is that what Alice is ultimately instructing is that conventional abstract ideas to conventional practices do not become patent eligible by adding routine components and functions in order to practice the conventional idea on a computer. But that case didn't go that far, did it? I mean, we don't really know where the boundary is. My concern with your argument is before us, or at least on this appeal, to focus on the appeal, is that even if some of the claims, and let's assume some of the claims are sufficiently detailed to overcome abstraction, you still have the problems of the trial judge summary judgment under Section 103, for example. It might be helpful to hear your comments on Section 103. Okay. May I finish answering Judge Schultz's question and then turn to the 103 issue, Your Honor? May I complete my answer to the question about step two? Yes, of course. So in the alternative, even if you believe it's proper to define the abstract idea as broadly as the district court did, then the question becomes, when we look at the claims as a whole and as the individual claim limitations, do the claims preempt the entire abstract idea or even a majority of it? And clearly, here they do not. If the abstract idea is the broad idea of a computerized incentive program, there are many, many, many computerized incentive programs that are not preempted when we consider the specific claim limitations. The claims themselves establish that. The fact that there were dozens of prior patents cited against the patent to other types of computerized incentive programs. I know you need to still answer Judge Newman's Section 103 question, but the preemption angle that you're presenting only takes you so far. That's not really a complete answer because I can think of the Ultramershal case, for example. That was an 11-step method for streaming video content on the Internet. There were 11 steps going on there, and I think it's fair to say that that claim did not preempt all ways of streaming video content in exchange for watching a commercial, and nevertheless, even though it didn't preempt the abstract idea per se, it was still nevertheless found invalid under Section 101. The difference, I believe, Your Honor, between the facts of that case and the facts here, is that ultimately the steps in Ultramershal were simply sort of the computer-required components to computerize the conventional practice, fundamental longstanding practice of using advertising as a currency medium. And here, we don't have that situation. Here, the steps of this claim define an entirely new method and system to operate an incentive program. So even if you remove all the computer components and look at the actual methodology involved, there was no evidence in the record that that type of an incentive program, where the sponsor controls the selection of individual awards for individual consumers and dictates the fulfillment details in the manner that the claim requires, and communication with inventory data to be able to integrate the business data with the incentive program strategy. There was no evidence in the record that that method was conventional, whether practiced manually or through any prior computer system. And that takes us out of these other cases where conventional activity was simply computerized, even with numerous steps. Now, to your question, Your Honor, about 103, the district court overstepped its bounds and became a fact finder in the face of a record full of genuinely disputed material facts regarding the proper interpretation of the two primary pieces of prior art, Dallapa and Scraggy, the evidence of commercial success and other secondary considerations of non-obviousness, the evidence of whether there would have been a motivation to modify the teachings of Dallapa in view of Scraggy. And this not only made his summary judgment under 103 improper, but it also infected the analysis under 101 because the district court relied on some of that same evidence as justification for a finding that these claims really did do relate to conventionally practiced activity. What the court should have done is recognize that on this record, none of these issues were appropriate to be resolved on summary judgment. We submitted a declaration of a qualified technical expert, Mr. Sherwood. He analyzed the prior art in detail. It was Safeway's burden of proof on all these issues. They submitted no expert testimony whatsoever. They simply made lawyer argument about how they interpreted the Dallapa reference and the Scraggy reference and why it supposedly would have been obvious to combine the two. The district court largely ignored Mr. Sherwood's proffered expert opinion. That was improper. His reasonings for doing so are really unsound. He then didn't even accept all of Safeway's interpretations of the prior art. The court came up with entirely new interpretations of the Dallapa reference. For example, this issue of the award fulfillment application on the host having to be in communication with an inventory management system. That is a very important requirement of the technical architecture of these claims. The district court identified three computers of the Dallapa reference as being the host system. But when it came to this issue of the host system and this fulfillment program, having to communicate with an inventory management system, the district court, in a very inconsistent manner, relied instead on a computer that's located at a retail store, which the court's own analysis did not identify as being part of the host system. He then noted that in Dallapa, this computer at the retail store communicates with an inventory management system. But that doesn't match the architecture of the claims. The claims require a host system with an automated award fulfillment application that has the recited functions of the claim and which also is in communication with an inventory management system. Mr. Sherwood was a qualified technical expert who analyzed the art from the perspective of a person skilled in the art. This court has made clear that other than simple cases, that type of evidence is very important. This is not a simple case. These are complicated computer systems involving many different components. And frankly, the district court just misread and misapplied what Dallapa's complex architecture really was showing relative to the claims. He made similar errors in analyzing whether what is an award database could be considered this inventory management system. The claims require both an award database and separately recite that this fulfillment application communicates with an inventory system. And that architecture is important because a core concept of this invention is the ability of the sponsor to set up these programs with access to real-time inventory data about business conditions that exist so that the sponsor can very readily determine which awards to offer to which consumers at which locations. That was a technical advance over the art. It was evidence in the record that that was a very important advance. But are the claims really written that way, I guess? I'm sorry? Are the claims really written that way as describing some detailed technical advance? I mean, I know the lower court judge looked at the claim as essentially saying, well, of course you need to check the inventory before you direct a customer to a location to pick up their award. And so the fact that a system has automated pooling of knowledge of what kinds of awards are available to give and where are they located to be given to a customer, what's so unique and special about that? Well, your question really, the point you made about the district court's ruling, really highlights the problem here. The district court, as you just mentioned, said, well, of course a retailer would check inventory before giving an award. Well, the record shows that that was not the conventional practice. In the real world, these retailers are running multi-store operations serving thousands and thousands of customers and distributing. The claims don't call for thousands and thousands of customers and thousands and thousands of different companies. That's correct. I agree with you, Your Honor. I think the point made below was that this claim, as written broadly, it covers fairly simple embodiments practicing these claims. Well, I don't really agree that the claim is directed to simple embodiments because what the record shows is that there was a complete separation in function and structure between the systems retailers used to run incentive programs and the systems they used to run the rest of their operations, their inventory systems, their point-of-sale systems. And what the inventors did was essentially bring those two systems together in a way that allowed retailers of all sizes to much better coordinate the logistics and the use of business intelligence in running these programs in a much more effective way. There was overwhelming evidence in the record. So the inventive concept boils down to before assigning out awards, checking the inventory to make sure the awards are there? No, the inventive concepts, we look at the claim as a whole. It's a combination of a system in which the sponsor of the program controls the selection of individual awards for individual consumers that are personalized to the consumer's demographic and psychographic preferences and also does so using a system that can communicate with the inventory data in order to allow the sponsor to make good decisions in that targeting. And the system requires that the sponsor can then dictate exactly where that consumer can pick up that particular award. And the evidence in the record is that there were no prior systems that did that. And in the real world, because they didn't do that, there were real challenges associated with operating these large incentive program systems. Now, I agree with you, the claim is not limited to any particular size. But I submit that it is still relevant to look at real-world evidence of the commercial impact of this invention, the commercial success that allowed companies like Safeway to achieve, the lack of any such system in the 1997 timeframe when the invention was applied for, and the fact that even the closest two prior art references, when properly read as a person of skill in the art, would read them, do not disclose or suggest this type of a system. Let's hear from the other side. We'll save you some rebuttal time. Thank you, Your Honor. Mr. Martin. Thank you and good morning, Your Honors. May it please the Court, James Martin for Safeway. Judge Bryson entered two dispositive orders here that thoroughly analyzed the record and properly applied the controlling law, and we urge the Court to look to those two orders and the analysis in it in order to affirm. Picking up on a couple of the 101 points that were raised, this Court's case law, the Alice case, the Bilski case, the Mayo case, all take prong one of the Alice test and boil down the claims to their essence or the heart of the claims in exactly the way that Judge Bryson did. And so I don't think that we can find any error at all in the way he treated the inventive concept here, particularly when we compare it to the run of cases that this Court has decided. What do you think the Supreme Court meant with respect to prong one when it said that the question to be asked is to decide whether the claim is directed to an abstract idea? And so, therefore, it's not just about the bare attempt in isolation to figure out what must be the underlying abstract idea in a claim, but instead to try to determine above and beyond that whether the claim itself is directed to that abstract idea. What do you think the Supreme Court was getting at? Well, I can only say in terms of the Alice opinion, the Court seemed to be looking at conceptually what did the claim relate to when you looked at all the specific elements of it. And there, of course, they reduced it to intermediated settlement risk as the proper description of the claim under prong one. Because my question is, can you imagine a situation where a claim convention would ultimately survive under 101 because prong one of that two-step framework had not been met? Because you don't always try to just merely find whether there's an abstract idea. I think the question is, is the claim directed to an abstract idea? It doesn't say locate the underlying abstract idea. So the way the prong one is framed, it suggests, does it not, that there's a possibility that there are claims out there that are not directed to an abstract idea. I think it suggests that, but it still comes down to a matter of construction of the claims themselves on whether you end up there. I mean, that seems to be the lesson from the cases, not only Alice, but from this Court as well. So it's theoretically possible, I suppose, to draft away from the abstract concept. But we certainly don't have that when you take a look at the claims here. I think even if you moved beyond that to the second step of Alice, there is no detail in the claims here. There is no specificity that sets forth an inventive concept. And certainly the claims as drafted here are directed to an abstract concept. In fact, the patent admits that. It says it's a commonplace, ordinary practice. And to me, that fits well within the concepts that this Court has articulated as common, ordinary business practices in Bancorp, in Intellectual Ventures, in Versada, and a whole host of cases. On prong two, it's... Let me ask you, you're turning to prong two, and something that's puzzled me a little bit in looking at both this case and the various cases that have been decided in this course in the wake of Alice and so forth. When we're looking at prong two, the Supreme Court says we look for an inventive concept, correct? Does that mean we're looking for something that is clearly an invention as opposed to an abstract idea? Or are we looking at something that's an invention that is not novel, that is novel, non-obvious, not anticipated? In other words, where do we draw the line in the inventive concept inquiry between what's an inventive concept and whether we're in a 102 or 103 situation? I've just been puzzling on that. Maybe I shouldn't be. Well, no, I think that there isn't a case that ties this all up in a neat bow. So in reading through the cases, I think the analysis goes something like this. Ultramershal would tell us that novelty alone is not going to provide us with the inventive concept. We knew there that there were some very specific limitations, limitations far more detailed here, and the patent specifically provided, and the argument was made that it was novel. And there the court said, that's not enough. Second, in Alice, what we had was a set of limitations that called for a specialized computer to perform ordinary business functions or carry them out more efficiently. And there the Supreme Court told us, that's not enough. So I don't think that the inventive concept can be satisfied simply because we have novelty on the one hand or a specialized computer. That makes it more efficient on the other. That much we know. At the other end of the spectrum, we know from DDR, we know from Research Corporation, and we know from the Deere case, that if you have disclosures or limitations in the claims that alter the way the computer performs a DDR, that provide a technical advancement in the way the computer functions, and that's Research Corporation, or that you have a revolutionary development. You're theorizing that you could have a technical advance in the way the computer operates, but perhaps that advance would not be non-obvious. Yes. You could satisfy the inventive concept prong of the Alice regime, but you might not have a non-obvious invention. I think that's possible. I don't think you can get it out of the claims in this case by any stretch of the imagination. Do focus on the claims here. I mean, it is a very interesting evolution of how Section 101 is being treated in every different case on different facts and on different details, which have led to generalized statements, which we then try to apply. And it seems to me that to help focus on the correctness of the summary judgments here, because they were on the three grounds to respond to Section 101, and because if indeed this ruling is supportable for summary judgment on the ground of obviousness, then at least that will resolve this case. And if it's not, then we must consider the other elements. Okay. So to finish off with 101 and to pivot immediately to 103, this case is the functional equivalent of Alice when you look at the claims. Each of the steps here relates to well-understood conventional activity. Computers are hosting, using computers and networks to communicate, using databases to manage data. There is nothing in the claims about improving computers themselves or improving the operation of computers because of a problem that arises from computers. Well, the other side says, I know you've got to get to 103, but the other side says, the interesting twist here, the purported inventive concept, is the integration of two information systems. One is the inventory management system, and the other one is the incentive awards program. And those two information systems hadn't really been adjoined, and they are integrating them together, and by doing so, you get a much more robust system overall. You may get that as a matter of lawyer argument, but you're not going to get it out of the specific language in the claims themselves. Well, it talks about those two systems I just talked about as being in communication with each other. It does, but there is nothing in the claims themselves that explains what that communication is, how it's accomplished, or that is accomplished, as a matter of fact, Your Honor, by anything more than automation using computers. The claims don't say anything about how the databases operate. They don't say anything. But the claims don't put in the details. Those belong in the specification, unless you're telling us that the claims must include details that distinguish from the references, which is a supportable theory. Under Section 101, the claims, as Accenture makes clear, are the key to this, and there isn't anything in these claims that even explains the inventory management system. Now, that's the abstraction aspect, but now let's talk about obviousness. Okay. Under obviousness, it seems to me, the basic proposition that's offered by the other side is that expert testimony was provided here and required here in order to determine both issues of whether the patent was obvious in light of the prior art, and second, whether the motivation to combine the DILAPA and Scrogi references was apparent from the prior art. Judge Bryson goes through those issues very carefully, and as we know from KSR and the following cases, expert testimony is not required on either one of these issues when the motivation to combine is apparent from the prior art, which it is here, or alternatively, where the problem to be solved is one that doesn't involve technological analysis where an expert needs to explain some functioning, which is also true here. There is nothing like that in this patent or in these claims, and in fact, the detail in Judge Bryson's analysis demonstrates his understanding of the art and his comprehension of it, which led him to the conclusions on obviousness. Turning to Mr. Sherwood's declaration, we find three things there that are relevant to 103. The first is he doesn't analyze the prior art references in any great detail in a lengthy declaration. He talks a lot about the claims, and he makes a number of legal arguments, but he doesn't make a real nitty-gritty comparison with the prior art in the fashion that Judge Bryson did. Second, it's not a technological explanation in that declaration. It is more aligned with an argument about what the claims mean, and so that to me is not a function for an expert either. And finally, the motivation to combine is apparent from the factual record here. DELAPA was a very comprehensive coupon system, merchandise inventory system that existed in 1992, before the advent of computer applications. Scrogi followed that by taking the same sort of coupon system, adding the computer to it, a logical step, and as Judge Bryson said, it was at least apparent to an ordinary person in the art that the combination of DELAPA and Scrogi would have led you to say, there is nothing non-obvious, if you will, about using a computer to speed up the delivery of these coupons. That analysis fits very consistently into this Court's obvious need to speed up the delivery of these coupons. And when you have a case where the prior art leads you to this conclusion, it is not immune from summary judgment, and it certainly isn't immune from summary judgment just because an expert declaration arrives, or because, as has been argued here, the moving party didn't have an expert declaration of its own. So 103, Your Honor, is fully dispositive, as is, I might add, the anticipation analysis that Judge Bryson made for precisely the same reasons. He followed the claim disclosure specifically in DELAPA, he aligned them very specifically with the limitations and disclosures in the patent here, and it is clear that the DELAPA patent does indeed anticipate the elements of the 830 patent, and this diversion that we see there, that Sherwood's declaration can change that. It can't. It can't change what DELAPA claims, number one. And number two, the differences that are offered up as to the sponsor and administrator and inventory management system simply don't exist. DELAPA discloses fully an inventory management system, and it is clear under the DELAPA patent, as Mr. Sherwood, the expert, conceded, that a sponsor and an administrator perform functionally the same task. So anticipation is likewise present, and 102 is a fully dispositive ground. But the 101 analysis in this case that Judge Bryson undertook fits very comfortably within this Court's run of cases in its analysis of abstractness and the inventive concept. And I call the Court's attention, finally, to the claims here. You will not see the kind of content that is necessary, and the claims are the beginning and the end of the analysis, to create an inventive concept consistent with ALICE, Ultramercial, and the remaining cases. Any questions for Mr. Martin? Thank you, Mr. Martin. Mr. Maloney, you have a couple of minutes. Thank you, Your Honor. On this issue of Step 1 and Step 2, what the District Court should have done, if we are defining the abstract idea as broadly as the Court did, the Court should have then recognized that under Step 2, these claims do not simply claim the abstract idea itself. And that is the purpose of Step 2 under ALICE, to determine if there is an inventive concept that gives us comfort that the claim is not simply claiming a computerized version of the abstract idea itself, using routine functions and routine components. That is the preemption issue that ALICE is concerned with, because we don't want to take conventional ideas out of the public realm simply by saying, well, I'm the first one to do it on a computer. And that's not what this claim does at all. These claims are much more specific than the abstract idea. They do not simply computerize all versions of incentive program systems. And then what the Court should have recognized is that this claim is eligible under 101. And as other cases have noted, we still have 102 and 103 to test the validity of a claim. And under 102 and 103, the Court should have recognized this is not a record upon which the grant of summary judgment is proper. They have a clear and convincing evidence, burden of proof. They tried to prove it with nothing more than lawyer argument, and we just heard more of that. They discount Sherwood's declaration as supposedly not detailed enough. It's an extraordinary detailed analysis of the prior art from the perspective of a person of skill in the art. And the agreed qualifications of that person are not possessed by Safeway's lawyers. And with all due respect, the District Court doesn't possess those qualifications either. And it showed because he misread some of the fundamental aspects of what the two pieces of prior art were disclosing. And he got the anticipation wrong because of that. His obviousness analysis was the same kind of conclusory hindsight analysis that this Court has repeatedly cautioned is improper. In one sentence, what is the inventive concept? The inventive concept is providing a system where the sponsor controls the selection of the award, consumer, and the fulfillment parameters in conjunction with the use of real-time inventory data from an inventory management system. That was inventive, it solved very real problems in the industry, and it's not disclosed in either of these references. Thank you very much.